*** Filed ***
11:44 PM, 10 Nov, 2026
U.S.D.C., Eastern District of New York

*Rec. in pdrive 11/16/26 rg

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------- X

STUART H. FINKELSTEIN,

Plaintiff,

v.

LILAAHAR BICAL, et al.,

Defendants.

---------------------------------------- X

Case No.: 23-cv-00049

Hon. L. DeArcy Hall
Hon. Clay H. Kaminsky

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 37 AND COURT'S INHERENT AUTHORITY AGAINST DEFENDANT LILAAHAR BICAL**

*Respectfully Submitted,*

Stuart H. Finkelstein
stuarthfinkelstein@gmail.com
*Pro Se Plaintiff*

# I. PRELIMINARY STATEMENT

This Motion is the culmination of a three-plus year campaign of systemic discovery abuse, false swearing, and obstruction by Defendant Lilaahar Bical ("Bical") primarily, and his corporate entities secondarily. This should have been a straightforward case about Defendants' refusal to fully compensate SHF, their former attorney, for years of legal work. Yet from the outset, Bical treated this litigation, the Court's authority, and his discovery obligations with contempt.

Bical is the driving force behind the misconduct. For the first 2.5+ years of this case, his position was tantamount to an unequivocal 'nothing to see here'—going so far as to deny under oath that Plaintiff performed *any* substantive legal services and that he paid Plaintiff *any* money for *any* services. To buttress those lies, he initially refused to produce virtually any discoverable material and disobeyed two direct court orders compelling production. He then – in an attempt to placate the Court and provide the appearance of compliance – submitted a perjurious sham affidavit attesting to a purported "thorough" document search that, under the scrutiny of cross examination, he acknowledged he could do nothing more than "guess" about.

After Bical ignored Judge Bulsara's admonishment and unequivocal final warning in December 2023, he produced a feeble 54-page production consisting mostly of a few publicly available documents and a few non-Bical emails, and written sworn to statements replete with lies. After Plaintiff moved for sanctions (early 2024), Judge Bulsara, based on recent Second Circuit precedent, recommended that with depositions still outstanding, Plaintiff may renew his motion after the completion of depositions, at or near the time of summary judgment.

Depositions and discovery are complete. The record is devastating and overwhelming. Bical failed to produce ***hundreds* of responsive documents**. He then lied to the Court ***over and over and over*** including in his January 2024 sworn-to affidavit and written responses. Bical later admitted at his March 2026 depositions that he conducted no document search, had no knowledge

of any search, and simply "guessed" about what little his *employees* may have done – evidenced not least by his refusal to produce 100+ emails sent by or to him (and these are just the emails that SHF *knows* about) that **highlight the very attorney-client relationship that Bical denied existed**. The later developed record reveals Bical's conduct to be willful, deliberate, and in bad faith. The Corporate Defendants, (Bical-controlled), followed suit with their own deficient productions (subject of separate motion practice) that only further highlight Bical's misconduct. And the foregoing was only exacerbated by Defendants' egregious attempt to sandbag Plaintiff's 2026 deposition with documents they withheld, ***for years*.**

Bical's strategy was and is clear: create an evidentiary void through obstruction, false testimony, and spoliation, and then exploit that void to defeat SHF's claims and support otherwise meritless defenses. The Court should not permit such a staggering abuse of the judicial process. The Court should strike Bical's answer and enter a default judgment against him; or, alternatively preclude Bical from supporting or opposing designated claims and defenses, and from introducing designated evidence; and/or issue an adverse inference that Bical failed to produce documents that were unfavorable to him. This relief is not sought lightly. The misconduct, from start to finish is so egregious that such sanctions are warranted.

## II. BACKGROUND

1. On January 3, 2023, SHF sued Bical for over $300,000.00 worth of legal work that he performed for Defendants, but for which they unlawfully refused to fully pay for. ECF 1.

### A. Plaintiff Serves the Bical RFPs; Bical Fails to Substantively Respond.

2. On April 19, 2023, SHF served 119 requests for production ( "Bical RFPs") and 15 Interrogatories on Bical. ECF 33-1, 33-2, (Exs. 1, 2); deemed served 06/30/23. *See* 07/05/23 Order.

3. The Bical RFPs sought critical documents in two buckets: the first (RFP #s 1-46) encompassed general requests for relevant correspondence, emails, financial records, invoices, tax

documents, bank records, SHF-related documents, corporate filings, and more; the second (RFP #s47-119) sought documents related to the 10 underlying matters, including pleadings, litigation files, work performed, communications with SHF and others regarding the matters, etc.

4. After Bical failed to respond, on 08/01/23, Plaintiff moved to compel. ECF 29.

5. On August 14, 2023, Judge Bulsara granted Plaintiff's motion, ordering Bical to produce "full and complete responses to Plaintiff's discovery demands no later than 8/28/2023." The Court further held that "[f]ailure to comply with [the] order **may result in the imposition of sanctions**." 08/14/23 Order (emphasis added).

6. On August 28, 2023, Bical served "discovery responses" that, in addition to violating many discovery rules, *did not contain a single document*.[1] *See* ECF 33-3, 33-4.

### B. SHF Again Moves To Compel; Judge Bulsara, Fed Up With Bical's Misconduct, Issues The Order Providing Unequivocal Directives And Warnings To Bical.

7. On September 8, 2023, SHF moved to compel & for sanctions. ECF 32. (Ex. 3)

8. On December 14, 2023, Judge Bulsara, fed up with Bical's abuses, granted the motion in a scathing order ("Order"). ECF 40, *Finkelstein v. Bical*, 2023 WL 9119575 (Ex. 4).

9. The Order described Bical's conduct as violative of its orders, engaging in "**misdirection**," and containing "**serious**" problems. *Id.*

10. Regarding prospective relief, the Order mandated that Bical:

> "1. Provide revised written responses […]. "Should Defendant file responses inconsistent with Rule 34 and this Order, **he risks the Court's entry of adverse inference and default**. […] further opportunities to provide Rule-compliant responses will not be granted…
>
> 2. Provide a declaration from a person with knowledge of the efforts undertaken to search for and produce responsive documents. The declaration should indicate the locations searched and indicate when and how the search was performed. The

[1] As provided in SHF's 09/08/23 Motion to Compel (ECF 32), and the Court's 12/13/23, Order, Bical produced zero documents, utilized boilerplate objections for all requests, and lied about the existence of documents he always had and his possession of same. *Id.*

obligation to conduct a search extends **not only to paper documents but emails and other electronic sources of information.**

3. **Produce no later than January 11, 2024, documents responsive to the requests**. To the extent that there are responsive documents, and Defendant believes that they are irrelevant or privileged and wishes to withhold them on those bases or any other objection, **he may no longer do so unilaterally. He has forfeited that right by not complying with Rule 34 or the Court's order in the first instance. He may only withhold such documents if he files a motion for a protective order with the Court seeking to avoid such production.**

ECF 40 Order at 6-7 (emphasis added).

**C. Bical Thumbs His Nose At The Order, Fails to Produce Hundreds of Responsive Documents, And Submits A Perjurious Sham Affidavit Replete With Lies.**

11. On January 4, 2024, Bical served his responses and "full" document production, which he filed on the docket. *See* ECF 43. (Ex. 5)

12. Despite Judge Bulsara's admonition just weeks earlier, Bical's 01/04/24 written responses again incorporated a laundry list of boilerplate "General Objections."[2] Moreover, for 117 of the 119 written individual responses to the RFPs, Bical's full response was:

> **RESPONSE:** . **Except for the documents that were previously provided and the documents attached hereto, there are no further documents that the Plaintiff is requesting in my possession. See Jackson Affidavit of Liaahar Bical.**

13. Bical attached thereto sworn testimony in a "Jackson Affidavit" averring under penalty of perjury:

[2] *See* ECF 40 (admonishing Bical for doing exactly that which rules and law prohibit). Instead of adhering to Judge Bulsara's Order, Bical repeated the same behavior.

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
STUART FINKELSTEIN,

Plaintiff,

-against-

LILAAHAR BICAL

Defendant.
-----------------------------------------------------------x

23-CV-00049-LDH-SJB

**JACKSON AFFIDAVIT OF LILAAHAR BICAL**

I, Lilaahar Bical, duly solemnly swear and state the following; I submit this affidavit in response to Plaintiff's Request of Production of Documents (119 documents requested) dated June 30, 2023, requesting documents in my possession regarding purported work that the Plaintiff performed. The Plaintiff has categorized his requests to eleven categories. **Category 1**:

Page 2
Jackson Affidavit
Index: 23-CV-00049-LDH-SJB

LILAAHAR BICAL

Sworn to before me this
20 day of December, 2023

Notary Public

DESMOND BUDRAM
Notary Public - State of New York
No. 01BU6303277
Qualified in Kings County
My Commission Expires May 12, 20 26

If the documents requested by Plaintiff existed, they would have been maintained by me at my business (2859 Flatbush Avenue, Brooklyn New York 11234) and electronically stored, preserved and contained in hard files/hard copies of documents. A search of the computer and office located at 2859 Flatbush Avenue, Brooklyn, New York 11234, for any electronic files, hard drives, hard files and hard documents has been thorough conducted. Based upon this search I have concluded that there are no further documents that the Plaintiff is requesting in my possession. The documents that have already been provided to the Plaintiff consists of all the documents that exist with regards to this matter. Defendant has made a good faith effort to provide the necessary records requested by Plaintiff. (Please note the full Appellate Brief has not

ECF 43 at 35-36 (Ex. 5).

14. Bical produced approximately twenty emails and five public court documents – **omitting hundreds of responsive documents that should have been produced**. Bical filed his entire 54-page document production on the docket. *See* ECF 43 at 37-91. It contained:

- 12 pages of emails **originating only from his daughter Nadia Bical's ("Nadia") custodial email account**. *See* ECF 43 at 37-41, 51-57.[3]
- 42 pages of public court documents. *Id.* at 42-50, 58-91.[4]

---

[3] Bical was cc'd on certain emails produced from Nadia's email address at his email address sammybical@aol.com. *See* Bical 3/25/26 Dep. Tr. 53:13-15. **Bical did not produce those *or any* emails from his custodial account**.

[4] ECF 43 at 73-79 contain a few emails that were attached to a publicly filed motion in *Carter Ledyard v. Bical*, Index 150470/2018.

15. Bical failed to produce a single email from his custodial inbox or a single email from Fran Doria's (Bical's right hand person/ controller, "Doria") custodial inbox.

16. In contrast, SHF attaches a sampling of **400+ pages of emails** (amounting ***to over 100 individual emails***) that were sent to (direct or cc) or from Bical at his email address, sammybical@aol.com. *See* SHF Decl. ¶ 28, Composite Ex. 6 (all produced by SHF).

17. The documents in Bical's "possession" include Nadia's emails – the 12 pages of emails Bical produced are from Nadia's account, reflected by Nadia's forwarding emails to Bical's attorneys. *See* ECF 43 at 35, 37.[5]

18. Bical further failed to produce or destroyed **hundreds of other documents** in the form of financial records, tax returns, corporate filings, invoices, letters, and a myriad of documents reflecting various correspondence. Bical failed to produce:

- a single tax return;
- a single bank statement;
- a single third-party communication;
- a single corporate document;
- a single email from his custodial inbox;
- a single document related to SHF or his 20+ year relationship with SHF
- a single communication to or from Frances Doria, his "controller";
- a single invoice or letter from Plaintiff requesting payment of legal fees;[6]

19. Bical never "file[d] a motion for protective order." ECF 40 at 7 (12/13/23 Order).

**D. Plaintiff's 2024 Motion for Sanctions; Judge Bulsara's Denial In Light of 2nd Circuit Preference For Renewal After Depositions.**

20. On February 15, 2024, SHF moved for Rule 37 sanctions against Bical for his discovery abuses. *See* ECF 44 (Ex. 7).

---

[5] Nadia informed Bical's attorneys that "**He [SHF] was paid for this.**" ECF 43 at 38.

[6] This, despite Bical's interrogatory responses that he received such invoices in at least 2022. *See* ECF 33-4 at 9. These were only produced years later.

21. On August 29, 2024, Judge Bulsara denied Plaintiff's ECF 44 motion without prejudice given recent 2nd Circuit precedent, noting SHF's better practice was to re-file his motion after depositions. *See* 08/30/24, Order; 08/29/24 Tr. 9:1-8 (Ex. 8) (also noting that Plaintiff may engage in such motion practice near summary judgment motion practice).

22. On December 27, 2024, SHF produced over 1,700 pages of documents, including a myriad of correspondence and files. SHF Decl. ¶ 32

### E. April–August 2025: After Bical's Companies Are Added, the New Corporate Defendants Make A Minor Production That Further Exacerbates the Issues and Also Failed to Produce Hundreds of Documents.

23. On June 30, 2025, after the Corporate Defendants were added (ECF 65), SHF served them with discovery requests. Ex. 9.

24. On August 4, 2025, Defendants (despite Plaintiff's 06/30/25 requests being directed to the Corporate Defendants) produced a single merged 725-page PDF via dropbox. (Ex. 10). (Defs 000001-000725). *See* SHF Decl. ¶¶ 33-35 (illustrating what was produced, including some relevant and telling documents, and many other filler documents and lack of other documents).

25. Defendants produced certain documents that should have been produced by Bical years ago, and also further continued to omit ***hundreds of relevant documents including hundreds of emails from Bical, Nadia, and Doria***, tax and business documents, correspondence, and other documents related to SHF and the ten underlying matters. *Id.* ¶ 36.

### F. March 2026: Bical's Depositions Confirms Much of What Was Already Suspected, Including His Failure to Produce Hundreds of Documents and the Perjurious Nature of His Sham Affidavit.

26. On March 4, 2026, Defendants produced a single page "Transaction Journal" purportedly showing a payment from Defendants to SHF. Ex. 11. (Defs 000726-000727).[7]

---

[7] This document has a "run date" of "12/09/2025," meaning that Defendants apparently generated this record three months before they produced it on the eve of Bical's deposition, and two+ years after Bical's responses were due.

27. On March 6 & 25, 2026, Bical was deposed. *See* Exs. 12, 13. He testified that:

- he and his companies filed tax returns from 2017-2021 through his accountant Martin Mack (Bical 3/6/26 Dep. 70:7-17);
- he maintains personal, and his companies maintain business, bank accounts (*Id.* 60:22-61:15);
- he did not know if he contacted his accountant or banks to retrieve documents (Bical 3/25/26 Dep. at 59:18-23;
- his email addresses is sammybical@aol.com, which he uses for personal, business and dealership matters (*Id.* 53:13-15, 55:1-10);
- that, despite his sworn-to statements in his affidavit, he actually has no personal knowledge of any efforts to locate documents, and he **did not personally conduct *any* document search** (*Id.* 274:22-24, 275:17-276:21);
- that he does not know "what computers" were searched (*Id.* 276:22-24);
- that he "**does not know**" if documents were deleted but he "**never asked**" anyone to delete documents including those at the Dealership or on the computer (*Id.* 282:2-15);
- **during the course of this case,** he **shredded** documents. (*Id.* 284-285);
- that he could only "**guess**" about what documents and records his employee Doria may have searched/ produced for him (*Id.* 278:16-18);

28. At SHF's deposition, Defendants ***<u>sandbagged</u>*** SHF **with documents they withheld for 3 years**. *See* SHF 05/18/26, Dep. at 182:22-184:23 (Mizrahi attempting to question SHF regarding a document from 2020 related to SHF that they never produced); SHF Decl. ¶ 50.

## <u>LEGAL STANDARD</u>

### A. Sanctions for Violation of a Court Order Under Rule 37(b).

Fed. R. Civ. P. 37(b) grants district courts broad discretion to impose sanctions when a party "fails to obey an order to provide or permit discovery." *Agiwal v. Mid Island Mortg. Corp.*, 555 F.3d 298, 302 (2d Cir. 2009). The Court *first* determines whether an order was violated, and *second*, fashions the appropriate remedy. *Id.* Sanctions may include deeming facts established, prohibiting a party from supporting or opposing claims or defenses, striking pleadings, entering a default judgment, and fees. Fed. R. Civ. P. 37(b)(2)(A); *Sullivan v. Aircraft Servs. Grp., Inc.*, 2022 WL 16836443, at *5 (E.D.N.Y. Nov. 10, 2022).

### B. Adverse Inference for Withheld or Destroyed Evidence.

A party seeking an adverse inference must establish: "(1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is relevant'" to a claim or defense." *Resid. Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). A culpable state of mind may be shown through bad faith, gross negligence, or negligence. *Id.* at 108; *Elavon, Inc. v. Ne. Advance Techs. Inc.*, 2022 WL 1173667, at *4 (S.D.N.Y. Apr. 20, 2022).

**C. The Court's Inherent Authority**.

Federal courts possess inherent authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Metropol. Opera Ass'n, Inc. v. Loc. 100, Hotel Emps. & Rest. Emps. Int'l Union*, 212 F.R.D. 178, 219 (S.D.N.Y. 2003). This includes the power to sanction for discovery misconduct, false testimony, and obstruction of justice. *Id.* at 220.

## ARGUMENT

### I. BICAL EGREGIOUSLY AND REPEATEDLY VIOLATED THE COURT'S AUGUST 28 AND DECEMBER 14, 2023, ORDERS BY WITHHOLDING OR DESTROYING HUNDREDS OF RESPONSIVE DOCUMENTS & THEN LYING ABOUT IT, OVER AND OVER AND OVER, WARRANTING SEVERE TERMINATING AND/ OR PRECLUSIVE SANCTIONS UNDER RULE 37(B)(2)(A) & INHERENT AUTHORITY.

**A. A Default Judgment/ the Striking of Bical's Answer and Affirmative Defenses is Warranted.**

In considering a default or striking a pleading under Rule 37(b), the Court analyzes four factors: "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of . . . noncompliance." *Guggenheim Cap., LLC v. Birnbaum*, 722 F.3d 444, 451 (2d Cir. 2013) *accord J.C. v. Zimmerman*, 150 F.4th 136 (2d Cir. 2025). Bical's egregious misconduct warrants extreme terminating sanctions.

Given Bical's prior extreme misconduct (including repeated refusal to produce *any* documents), Judge Bulsara's Orders made clear that such misconduct and nonproduction would no longer be tolerated. A default should be entered because Bical's misconduct spanning nearly three years fundamentally corrupted the integrity of these proceedings and would make it impossible for SHF to receive a fair trial on the merits. The record establishes that Bical: 1) **Willfully and egregiously violated two court orders** by failing to produce hundreds of responsive documents (and lying about it), including emails, financial records, tax returns, bank statements, corporate documents, and communications that go to the heart of this dispute; 2) **Submitted a perjurious sham affidavit** where he lied under oath that all documents were produced, that no further responsive documents existed, and that he conducted a "thorough" search – all untrue; 3) **Lied repeatedly in his written responses**, certifying in response to 117 of 119 requests that he had produced all responsive documents or that no such documents existed, when in fact he possessed ***hundreds*** of responsive documents, 4) **Destroyed potentially responsive documents** during this litigation; 5) **Sandbagged Plaintiff's deposition** by ambushing him documents withheld for years. Bical engaged in a sustained pattern of obstruction, misdirection, and false swearing that has forced SHF to expend enormous time, effort, and resources.

Noncompliance is willful "when the court's orders have been clear, when the party has understood them, and when the party's noncompliance is not due to factors beyond the party's control." *Manta Indus. Ltd. v. Law*, 2024 WL 3755559, at *9 (S.D.N.Y. Aug. 12, 2024). Willful non-compliance is routinely found, for instance, where a party has 'repeatedly failed to ... produce documents ... in violation of the district court's orders." *Doe v. Delta Air., Inc.*, 2015 WL 798031, at *8 (S.D.N.Y. Feb. 25, 2015) (quoting *Robertson v. Dowbenko*, 443 Fed.Appx. 659, 661 (2d Cir. 2011); *accord Handwerker v. AT & T Corp.,* 211 F.R.D. 203, 209 (S.D.N.Y. 2002). Moreover,

courts also construe a party's half-hearted attempt at compliance as willful. *Manta*, (citing *Ramgoolie v. Ramgoolie*, 333 F.R.D. 30, 36 (S.D.N.Y. 2019)).

*Southern New England Tele. Co. v. Global NAPs Inc.*, 624 F.3d 123, 144 (2d Cir. 2010) is instructive. There, the defendant was ordered, twice, to produce documents after failing to do so. When pressed on its non-compliance, the defendant "gave misleading or outright false answers to the court" regarding "whether documents existed or in whose custody they were." *Id.* at 130. Later, the defendant failed to "meaningfully" comply with discovery, shredded documents during the case, and made "untrue" representations about its possession of its own financial documents. *Id.* at 140. The 2nd Circuit affirmed the default, noting that while the plaintiff was not required to show prejudice, the records were still "obviously germane" to the claims. *Id.* at 148.

In *In re Tartaglione*, 2008 WL 336844, at *7 (S.D.N.Y. Feb. 5, 2008), the defendant's answer was stricken and a default was entered where after being ordered to produce highly relevant discovery and being warned of the consequences of non-compliance, the defendant "repeatedly failed to produce critical documents or respond to proper document requests and interrogatories, and there was reason to doubt his credibility and forthrightness."

In *Brooks Sports, Inc. v. Anta (China) Co., Ltd.*, 2018 WL 7488924 (E.D. Va. Nov. 30, 2018), the court recommended a default against the defendant for lying about the existence of documents that clearly existed (like "financial data") and for refusing to produce documents after repeatedly being ordered to. *Id.* at *13. Indeed, (like here) many of the discovery violations, involving lies about what documents the plaintiff possessed, "**occurred in plain sight.**" *Id.* The defendant attempted to conceal its discovery abuse through "perjurious declarations" averring that certain documents and communications didn't exist, even though they did, which the court called this a "disastrous decision." *Id.* at 14. *See Martinez v. City of New York*, 2018 WL 604019, at *24-25 (E.D.N.Y. Jan. 24, 2018) (after multiple court orders requiring full production, party's

"disingenuous claim" of full production, despite clear examples of documents that were requested but not produced, indicated willfulness and striking of defendants' pleadings and default).

Here, Bical has demonstrated a tortured history of non-compliance with court orders and lies, despite receiving numerous chances to participate in discovery. This Court's "regular and frequent warnings were sufficient to put 'him' on notice serious sanctions were imminent." *Guggenheim*, 722 F.3d at 453. The case for willfulness here is not difficult. Bical's obstruction/ lies have continued for years. As shown above and below, Bical failed to produce ***hundreds*** of responsive documents. He then lied about it, *over and over*. He then tried to sandbag Plaintiff's deposition with documents he withheld. Courts find willfulness for far less. The misconduct is so voluminous, SHF carefully lays out the full scope below.

The Bical RFPs divided 119 demands into two buckets. The first (RFP #s1-46) encompassed general requests, and the second was grouped by the ten (10) underlying legal matters (RFP #s47-119).[8] Ex. 1. The categories are addressed in turn:

**i) Communications**: including those involving Bical, Bical's agents, Nadia, Doria, SHF, and relevant third parties (e.g., RFP #s2-5, 13-15, 17-19, 24-35, 27). Bical failed to produce ***hundreds*** of relevant communications. Bical's 54-page production (ECF 43 at 37-91) contained only a) twelve pages of emails **originating only from Nadia's account** (*Id.* at 37-41, 51-57) and b) 42 pages of public court documents. *Id.* at 42-50, 58-91. **Bical failed to produce any emails from his custodial email accounts**, (including any communications to or from Doria); or a single invoice or letter from Plaintiff requesting payment of legal fees.[9] Bical failed to produce **at least**

[8] *Bical v. Redcom* (#s47-50); *Verdugos & United Rentals v Bical* (#s51- 53); *Bical v. Airtemp Mechanical Services* (#s54-57); *Bical v. Benenson* (#s58-68); *Pollack v. OP Development* (#s69-72); *Bical v. Bical – Matrimonial* (#s73-81); *CLM v. Bical* (#s82-102); *Personal Injury Suits Review* (#s103-108); *Gravesend Flag Co. v. Bical*, (#s109-113); and *Bical v. Topaz* (#s114-119).

[9] This was despite Bical's earlier 08/28/23 interrogatory response that he received such invoices in at least 2022. *See* ECF 33-4 at 9.

***over* one-hundred (100) emails** from or sent to Bical's custodial account alone. *Compare* ECF 43 *with* Ex. 6 (100+ email composite from Bical's account not produced that SHF knows of); *Bernazard v. Koch*, 2017 WL 11711323 (E.D.N.Y. June 13, 2017); *In re Dunne*, 2018 WL 4654698 (D. Conn. Sep. 27, 2018) (requesting party attached specific evidence to rebut assertion that it knew of withheld responsive material— two exhibits with emails to and from party's Gmail, in addition to party's testimony).[10] **He then lied in his "affidavit"** and his written responses by stating that he did produce the emails or didn't have them.

Bical **further omitted *over 100 emails* from the accounts of his agents Nadia and Doria's accounts, including nothing from Doria's account**. Bical should have, but did not produce a single one of these emails.[11] **He then lied in his "affidavit"** and his written responses by stating that he did produce the emails or didn't have them. *See* Bical 3/6/26 Dep. 53:13-15, 55:1-10, 282:2-15) (Bical still uses same email address he used in SHF communications, and says he didn't delete anything).

**ii) Documents related to SHF**: all documents related to SHF including SHF and Bical's 20+-year relationship and documents "referencing, regarding, relating to, or referring to SHF," all "contracts" between Bical and SHF, all communications with and about SHF, all documents (including payments) exchanged with SHF, and all documents that Bical might use at trial or

---

[10] *See Mason Tenders District Council of Greater New York v. Phase Construction Services, Inc.*, 318 F.R.D. 28, 43 (S.D.N.Y. 2016) (sanctioning responding party where it swore it wasn't aware of responsive documents but requesting party "identified specific evidence" that responding party was being untruthful including prior testimony and an affidavit).

[11] *DeCastro v. Kavadia*, 309 F.R.D. 167 (S.D.N.Y. 2015) (principal had "control" over his company's documents and should have produced them); *CA, Inc. v. AppDynamics, Inc.*, 2014 WL 12860591, at *4 (E.D.N.Y. Sept. 8, 2014) (evidence proffered that employees used personal email accounts for business purposes); *Plaza Motors of Brooklyn, Inc. v. Bogdasarov***,** 2023 WL 7684151, at *2 (E.D.N.Y. Feb. 13, 2023) (evidence that party has some "connection" to other email address warrants full production from that email account). Bulsara Order ECF 40 at 3-4 (explaining significance of producing ***all*** such documents including own side of emails); ECF 33-1 (SHF, *years ago*, showing what was not produced but should have been).

otherwise support of his defenses. *See* RFP #s3, 8, 12, 20, 22, 25, 31. Other than a few emails *from Nadia's account* and minimal public filings, Bical failed to produce *any* such documents. He then ***lied*** in his written responses that he did produce such documents. *See* ECF 43 ¶¶ 3, 8, 12, 20, 22, 25, 31. These were all lies,[12] reflected by the hundreds of correspondence, invoices, litigation files, etc. (that SHF *knows* of, never mind what we do *not* know of) that were withheld.

On this point, Defendants' deceptive and willful misconduct came into clearer focus than ever at Plaintiff's May 18, 2026, deposition. Attorney Mizrahi, nine hours into SHF's deposition (nearly 3 years after Bical's RFP responses were due), attempted to ambush Plaintiff with a "PDF" document he described as an "invoice" from "2020" related to a vehicle that he claimed was somehow associated with Plaintiff. *See* SHF 05/18/26, Dep. at 182:22-184:23; Bical RFPs #s3, 8, 12, 20, 22, 25, 31 (requesting documents related to SHF); SHF 06/30/25 Requests (RFP #9, 13, 15, 18-19 (requesting documents related to SHF and any repairs/maintenance allegedly performed on SHF vehicle)). This means that a) Defendants discovered a relevant document at some point before SHF's deposition, b) decided it was important enough to use (they only used three exhibits in ten hours), c) *intentionally* withheld it in the run up to his deposition, then tried to spring it on SHF *during* his deposition (**years** after it should have been produced), then when caught, *still*, refused to produce same.[13] Coupled with his fraudulent affidavit and sham 01/04/24 responses, the word "egregious" is not strong enough.[14]

**iii) <u>Financial Documents</u>**. SHF requested Bical's **tax returns** as well as the **tax returns for his businesses** for 2017 through 2022 (RFP #46), bank statements for Bical's entities (RFP

[12] This was also striking given Bical's sworn misrepresentations denying he ***ever*** paid SHF for legal work, and that any services were to be performed "**<u>without charge</u>**." ECF 13-2 ¶ 13 (Ex. 14).
[13] *See Gateway, Inc. v. ACS Comm. Solutions, Inc.*, 2009 WL 10695887, at *11 (S.D.N.Y. Sep't. 18, 2009) (severe sanctions warranted for sandbagging witness with unproduced document).
[14] Bical maintained this erroneous position throughout this case for 3+ years. *See* ECF 33-4 (08/28/23 Interrogatory Responses).

#45), payments made to SHF for legal fees and expenses (RFPs #28-29), & payments made to other counsel during the relevant time frame (RFP #30). Taking them in turn, Bical did not produce *any* tax returns. *See generally*, ECF 43. He then **lied** in his responses and Affidavit that he did produce his tax returns or that he did not possess them. *Id.* ¶ 46. Bical / his entities filed taxes and he had possession/control of them, which was explained by the Court and SHF at ECF 32, 40. Bical later admitted that, despite his sworn averments in his Jackson Affidavit that he produced or (absurdly) did not have his own tax returns, **he admitted under cross examination that 1) "of course" he filed his personal taxes and taxes for his businesses for the requested years**, 2) that he has access to the returns through his long-time accountant (Bical 3/25/26 Dep. Tr. 59:3-9), and 3) that he did not "remember" if he contacted his accountant or the government to retrieve same. *Id.* at 61. Bical lost the ability to object. ECF 40. His choice was produce everything or seek a protective order. Instead, he chose a non-option – to withhold and lie, ***over and over***.[15] *Id.*

SHF requested all documents related to payments[16] made from Bical and/ or his companies to SHF, as well as monthly bank statements for Bical's entities. RFP #45. Bical did not produce any such bank statements.[17] He then ***lied*** in his written responses (ECF 43 ¶ 45) that he did produce

---

[15] *Freeman v. Giuliani*, 2023 WL 5600316 at *9 n.6 (D.C. Cir. Aug. 30, 2023) (entering default where, in response to requests for financial records, plaintiff's "meager production [wa]s plainly deficient given the scope of financial documents responsive to [the] RFP.").

[16] Nadia's forwarding emails from ***her*** email with the subject **"*showing he was paid for this*"** underscores the severity of the withholding of financial and other documents. ECF 43 at 38.

[17] Bical always possessed such documents, for example, whether they were with his accountant or his bank, as illustrated in SHF's Motions to Compel and for Default (ECF 32, 44), the Court's ECF 40 Order, and at Bical's depositions. A party has "control" over material that it has the "practical ability" or "legal right" to obtain. *In re Liverpool Ltd. Partnership*, 2021 WL 5605044 (S.D.N.Y. Nov. 24, 2021). *Mirlis v. Greer*, 80 4 F.4th 377, 382 (2d Cir. 2023) ("lack of physical possession" of bank records does not excuse noncompliance with discovery order because "possession, custody, or control" does not require "actual physical possession of the documents at issue; rather, documents are under a party's control when that party has the right, authority, or practical ability to obtain the documents."); *De Vos v. Lee*, 2008 WL 2946010 at *1-2 (E.D.N.Y. July 29, 2008) (same regarding financial & tax-related documents).

bank statements or that he does not have them (as noted, untrue, as he had the ability to obtain same from banks). *See* Bical 3/25/26 Dep. at 61:22-62:4; *supra*, *Mirlis*, at 382. In response to the request for documents related to the payment of legal services to those other than SHF (RFP #30), Bical did not produce any such payments. He then lied[18] in his responses that he did produce such payments or that he does not have them. *See* ECF 43 ¶ 30.[19]

**iv) <u>Corporate Documents</u>:** including the bylaws, articles of incorporation, ledgers, operating agreements, documents showing Bical's ownership interest in his entities and relevant shareholders, etc. (RFP #35-36, 40-42, 44). Bical did not produce any such documents. He then again just straight up lied in his written responses that he did produce the articles, or that he does not have them (which again, of course was not true). *Id.*

**v) <u>Documents Related to the Ten Underlying Representations</u>**: including all work performed, all documents and communications related to the 10 cases, pleadings, litigation filings, communications with SHF and others regarding the matters, etc. (RFP #s47-119). As noted, other than a few public court filings, Bical failed to produce hundreds of responsive documents. His lies continued in his written responses (lies, given the hundreds of correspondence, invoices, litigation files, etc. that SHF *knows* of) that were withheld) and in his sham affidavit. ECF 43 ¶¶ 47-119.

---

[18] Through logic and Bical's admissions, this was untrue. Bical was prosecuted in this district during this time period. *See U.S. v. Bical*, 16-cr-00555-LDH (E.D.N.Y.). He retained and paid multiple law firms, including CLM. *See* ECF 33-5 at 15-22, ECF 33-9. Yet, Bical made material misrepresentations concerning such documents.

[19] Over *two years* later, Defendants produced 1) 600+ pages of irrelevant documents 2) 25+ pages of relevant billing documents, & 3) a "Transaction Journal" entry showing a single payment to SHF (no actual bank documents). *See* Ex. 11 (03/04/26 single-page 000727). This, coupled with Nadia's literal mention of what SHF was "paid" for, including payments other than that reflected in Ex. 11, highlights Defendants' previous egregious untruths that they *never* paid SHF, and that withheld such payment records for years illustrating the willfulness of their refusal to turn over underlying financial records (which was in direct contravention of the Order, ECF 40).

Bical's misconduct was unquestionably (and frankly, *unbelievably*) willful. He unabashedly and repeatedly violated the Court's August 28 and December 14, 2023, Orders by withholding, destroying, or otherwise failing to produce ***hundreds*** of responsive documents. He then doubled down and violated the Order again, and federal perjury laws, by submitting materially false sworn testimony in his "Jackson Affidavit," and lied repeatedly in his written discovery responses when he stated that he produced all responsive documents or did not have them. His willfulness is more than clear, compounded by his obstruction, false statements, and sandbagging. *See Sentry Ins. A Mut. Co. v. Brand Mgmt., Inc.*, 295 F.R.D. 1, 15-16 (E.D.N.Y. 2013) ("the supplemental Weber affidavit *did* (repeatedly) employ the phrase "produced all responsive documents in my possession, control or custody." **The sin, of course, is that these affirmations proved *untrue*,** when Judge Mann found that later-produced documents were responsive notwithstanding Weber's averments otherwise." – entering order of preclusion)[20]; *Burrell v. Am. Tel. & Tel. Corp.*, 282 F. App'x 66, 67-68 (2d Cir. 2008) (affirming terminating Rule 37 sanctions after responding party repeatedly concealed relevant and discoverable information, misrepresented facts through testimony, and otherwise obstructed the litigation); *Lynx Cap. Partners of NJ, LLC v. Bayes Cap. LLC*, 217 A.D.3d 571 (1st Dep't 2023) (affirming striking of defendants' answer, enter a default judgment in favor of plaintiff, and award attorneys' fees because the defendants repeatedly failed to furnish discovery responses and violated the trial court's explicit order related to Jackson affidavits); *Klipsch Group, Inc. v. ePRO E-Commerce Limited*, 880 F.3d 620 (2d Cir. 2018) (finding willfulness for based on facts revealed by CEO during his deposition that company did not take necessary steps to preserve documents); *Vesnic v. O'Toole as Trustee of Estate of Reifler*, 2022 WL 17404784, at *2-3 (S.D.N.Y. Dec. 2, 2022) (after responding party's ridiculous

[20] Like here, where the later-developed record shows that Bical's affidavit/ written responses were "untrue." *Sentry*, 295 F.R.D. at 15-16

"20th century" statement i.e., that it need not go acquire responsive bank statements, responding party "walk[ed] on perjury" with improper & untimely responses that it had "no documents" (when it obviously possessed the documents), party thus violated court's orders, and default/ striking of answer was warranted). It is difficult to conceive of a clearer example of willful misconduct.[21]

2. The Efficacy of Lesser Sanctions

Lesser sanctions are insufficient where a party has failed to comply with court orders, after multiple opportunities to do so. *See Antonmarchi v. Consol. Edison Co. of N.Y.*, 514 F. App'x 33, 35 (2d Cir. 2013); *Aristidou v. Aviation Port Servs., LLC*, 2021 WL 2471269 (E.D.N.Y. June 17, 2021). Where the Court warned of potential consequences of continued noncompliance, it should guard against the appearance of a "paper tiger" to sufficiently punish, deter, and remedy the non-compliant party's misconduct. *See Local Union No. 40 of the Int'l Ass'n of Bridge, Structural and Ornamental Iron Workers v. Car-Win Constrct.*, 88 F.Supp.3d 250, 265 (S.D.N.Y. 2015). "District courts are not required to exhaust possible lesser sanctions before imposing dismissal or default if such a sanction is appropriate on the overall record." *New Eng.*, 624 F.3d at 148.

Any sanction lesser than a default/ striking Bical's pleadings here is insufficient. Bical's sordid conduct spans years. The Court explicitly warned Bical of the consequences of continued non-compliance. He not only did not care, but he embarked on a scheme to violate the Court's orders, lie repeatedly under oath, and withhold or destroyed hundreds of documents. What is the point of a Court or its orders if Bical can do this? Prejudice isn't required, but it is abundantly present (below). Bical has long known of the critical nature of the withheld documents. He refused to produce them, lied about it, then tried to sandbag SHF. Bical cannot be permitted to benefit

[21] While SHF demonstrates severe prejudice, below, prejudice is not required when seeking a default or preclusion for violation of a court order under R. 37(b). *Sentry*, 295 F.R.D. at 7.

from effective violations of nearly every rule. Any lesser sanctions will not account for the misconduct, cure the overwhelming prejudice, or deter such egregious misconduct.

3. <u>The Duration of the Period of Noncompliance</u>.

Three months to a year of non-compliance have been held to weigh in favor of dispositive sanctions. *See Embuscado v. DC Comics*, 347 Fed.Appx. 700, 701 (2d Cir. 2009) (three months); *Georgiadis v. First Boston Corp.,* 167 F.R.D. 24, 25 (S.D.N.Y.1996) (four months). "And periods of six months or more weigh even more **heavily** toward such remedies." *Local Union*, 88 F.Supp.3d at 265-66 (collecting cases from six months to one year). Bical has been out of compliance since 08/01/23, at the earliest, and 08/14/23 (order) at the latest. His non-compliance continued past the close of discovery to this day.

4. <u>Whether Non-Compliant Party Warned of the Consequences of Noncompliance</u>.

The "warning" factor is significant. Where the non-compliant party was specifically warned of possible severe sanctions, the Court is on solid ground to impose such a sanction. *Local*, 88 F.Supp.3d at 265-66. Indeed, "it is difficult to imagine how a [terminating sanction] following an unheeded warning could be an abuse of discretion." *Id.* (citing *Obot v. C.I.R.,* 254 Fed. Appx. 57, 58 (2d Cir. 2007)). Here, the Court could not have been clearer through its warnings. Bical was warned on 08/14/23, that he risked "sanctions" for continued non-compliance. Then, after further non-compliance, on 12/14/23, the Court held that Bical "**risk[ed] the Court's entry of <u>adverse inference and default,</u>**" if he *again* failed to serve proper responses, and that "further opportunities to provide Rule-compliant responses **will not be granted**." *Id.* Not only did Bical not heed the Court's warnings, he embarked on a massive campaign of deception and obfuscation.

The Court should strike Bical's Answer and enter a default judgment against him.

**B. Alternatively, the Court Should Order Preclusion Under Rule 37(b)(2)(A)(i)–(ii).**

Under Fed. R. Civ. P. 37(b)(2)(A)(i) and (ii), the Court may designate certain facts/ matters as established or prohibit the offending party from "supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" that would rely on the specific information sought. *U.S. v. Veeraswamy*, 350 F.R.D. 184, 207 (E.D.N.Y. 2025). Discovery orders are meant to be followed – a party who "flouts such orders does so at his peril.'" *Bambu Sales, Inc. v. Ozak Trading Inc.*, 58 F.3d 849, 853 (2d Cir. 1995). Preclusion is necessary to ensure that a party will not benefit from its failure to comply, to compel compliance, and to deter future abuse. *See Veeraswamy*, 350 F.R.D. at 207; *Sentry*, 295 F.R.D. at 15–16 (ordering preclusion where sworn Jackson affirmations of full document compliance were untrue). Where a litigant's noncompliance conceals the documentary record on core claims, courts may bar the non-compliant party from benefiting from the resulting evidentiary void. *Id.* (collecting cases).

If the Court declines to strike Bical's Answer/ enter a default (it should not so decline), then, ***at least***, it should exercise its preclusion authority under Rule 37(b)(2)(A)(i-ii) and its inherent authority. Bical withheld or destroyed hundreds of documents including all emails from his personal email, withheld or destroyed communications to and from his controller Doria and Nadia and other 3rd parties, refused to produce tax returns and bank statements evidencing legal fee payments and potential tax write-offs, refused to produce numerous litigation and related files for the ten underlying matters, admitted to destroying documents during this litigation, submitted a sham affidavit and fraudulent statements that misled SHF and every presiding Judge (Bulsara, Merkl, Kaminksy, Hall), and sandbagged SHF's deposition. *Supra*. Bical cannot benefit from systematic suppression of primary documents. *See Lujan v. Cabana Mgmt.*, 284 F.R.D. 50, 70-71 (E.D.N.Y. 2012) ("importance of the evidence" factor weighed "heavily in favor of preclusion"). The Court should order targeted Rule 37(b)(2)(A) relief as follows:

**a. Offering Any Evidence Opposing SHF's Claims and in Support of His Defense:** Bical is precluded from offering evidence and calling to testify or offering the testimony of any witness in opposition to SHF's claims, such that Bical may cross examine SHF's witnesses and use SHF's evidence, but cannot put on a case of his own. *See Ho v. Target Constr. of NY, Corp.*, 2010 WL 2292202, at *4 (E.D.N.Y. June 3, 2010) (precluding defendant from offering evidence in support of his defense); *U.S. v. Buff*, 2023 WL 4447072 (S.D.N.Y. July 11, 2023); *Oklahoma Feder. Gold and Numismatics, Inc. v. Michael W. Blodgett*, 24 F.3d 136 (10th Cir. 1994) (similar misconduct, affirming sanction prohibiting defendant from "presenting any witnesses, exhibits, testimony or evidence," and permitting him only to "cross-examine plaintiff's witnesses and to use any exhibits offered by plaintiff.").

**b. Retention and Attorney-Client Relationship**: Bical is precluded from offering evidence to contest that Bical retained Plaintiff to perform legal services with respect to the ten (10) underlying matters identified in the Amended Complaint (ECF 65 ¶¶ 17–20).

**c. Performance of Legal Services**: Bical is precluded from offering evidence to contest that Plaintiff performed the legal work at issue regarding the ten underlying matters documented in Plaintiff's itemized invoices across all ten matters.

**d. Expectation of Payment/ Non-Gratuitous Representation**: Bical is precluded from offering evidence to contest that Plaintiff rendered all professional legal services with a reasonable expectation of monetary compensation in exchange for same. [22]

**e. Preclusion of Unproduced Documents**: Bical is precluded from introducing, referencing, or relying upon any document, invoice, record, or electronic communication not timely produced in his formal discovery production.

---

[22] SHF alternatively requests that the matters provided in subsections **b-d** be "taken as established" under Fed. R. Civ. P. 37(b)(2)(A)(i) given the severe prejudice outlined herein.

## III. ADDITIONALLY OR ALTERNATIVELY, AN ADVERSE INFERENCE IS WARRANTED.

An adverse inference may be imposed as a discovery sanction including where the non-movant destroyed or failed to produce evidence properly demanded by the opposing party. *See Mali v. Federal Ins. Co.*, 720 F.3d 387, 392 (2d Cir. 2013). The court may instruct the jury that it *must*, *should*, or *could* draw inferences against the non-movant. *Id.* at 392-93.

The requesting party "must show (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had 'a culpable state of mind'; and (3) that the missing evidence is 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Resid. Funding Corp. v. DeGeorge Fin. Corp.,* 306 F.3d 99, 107 (2d Cir. 2002). "A 'prejudiced party' will be permitted sanctions - particularly, as discussed in *Kronisch,* the sanction of an inference in its favor—"so long as [it] has produced *some* evidence *suggesting* that a document or documents relevant to substantiating [its] claim would have been included among the [withheld or destroyed] files." *Linde*, 269 F.R.D. at 196. All factors support a mandatory adverse inference.

1. The Party Having Control Over the Evidence Had an Obligation to Timely Produce It.

This factor is easily met. Bical, the Dealership CEO and a Defendant since inception, was always under the obligations of Rules 26 and 34, and multiple court orders to produce all documents. *See surpa*, 08/14/23 Order; ECF 40 (12/13/23 Order); *supra* n.17.

2. Bical Had A Culpable State of Mind.

The culpability requirement may be satisfied when a party acted knowingly or negligently—"ordinary negligence" is sufficient. *See Residential*, 306 F.3d at 108. "In the discovery context, negligence is a 'failure to conform to the standard' of what a party must do to meet its obligation to participate meaningfully and fairly in the discovery phase of a judicial

proceeding. A failure to conform to this standard is negligence even if it results from a pure heart and an empty head.'" *In re Pfizer Inc. Securities Litigation*, 288 F.R.D. 297 (S.D.N.Y. 2013).

Here, set forth above, Bical's actions far exceed "negligence" – his actions were egregiously ***willful***. He flagrantly violated multiple court orders, lied over 100 times in discovery responses, affirmed a full production he knew he was unable to actually testify about, claimed he produced documents he never did, or that he didn't have documents he always had, shredded documents during the case, submitted a sham perjurious affidavit, and sandbagged Plaintiff's deposition. *Supra* I(A)(1) – **willful misconduct**. Alternatively, *at an absolute minimum*, Bical engaged in ordinary and gross negligence. If any of his testimony is credited, he eventually admitted that despite his sworn-to statements in his affidavit, he actually has no personal knowledge of any efforts to locate documents, and he **did not personally conduct *any* document search** (*Id.* 274:22-24, 275:17-276:21); that he does not know "what computers" were searched (*Id.* 276:22-24); that he "**does not know**" if documents were deleted but he "**never asked**" anyone to delete documents including those at the Dealership or on the computer (*Id.* 282:2-15); **during the course of this case,** he **shredded** documents. (*Id.* 284-285); that he could only "**guess**" about what documents and records his employee may have searched/ produced for him (*Id.* 278:16-18).

As if blanket refusal to produce documents was not bad enough, Bical compounded his folly ***by lying to the Court and SHF, over and over***, claiming that he produced documents he did not actually produce, or that he does not possess documents that he clearly does possess. Courts routinely find, *at least,* negligence and gross negligence, for far less egregious actions. *See Osberg v. Foot Locker, Inc.*, 2014 WL 3767033, at *14 (S.D.N.Y. July 25, 2014) (failure to preserve relevant evidence constituted negligence); *Pfizer Inc.*, 288 F.R.D. 297 (failure to identify key players, issue hold, preserve evidence, to cease deletion practices is negligent); *Veeraswamy*, 350 F.R.D. at 207 (failure to supplement discovery was willful in face of multiple court orders and

collecting cases noting that failure to produce documents in itself is generally sufficient for willfulness finding); *International Assoc. of Reinforcing Iron Workers Union Local 361 v. Low-Bid Inc.*, 2023 WL 5747345 (S.D.N.Y. Sept. 6, 2023) (purported lack of understanding of discovery obligations were not credible against backdrop of court orders, finding willfulness).

3. The Missing Evidence is 'Relevant' Such That A Reasonable Trier of Fact Could Find that It Would Support A Claim or Defense.

A relevancy showing is something more than "pure speculation." *Sovulj v. U.S.*, 2005 WL 2290495, at *5 (E.D.N.Y. Sept. 20, 2005). "[T]he burden placed on the moving party to show that the lost evidence would have been favorable to it ought not be too onerous, lest the spoliator be permitted to profit from its destruction." *Thomas v. Kelly*, 903 F.Supp.2d 237, 257 (S.D.N.Y. 2012). "[To] hold [otherwise] would subvert the prophylactic and punitive purposes of the adverse inference, and would allow parties who have intentionally destroyed evidence to profit from that destruction." *Kronisch v. U.S.*, 150 F.3d 112, 128 (2d Cir.1998). Thus, "it is not incumbent upon the plaintiff to show that specific documents were lost." *Treppel IV,* 233 F.R.D. at 372.

This factor too is *readily* met – **the prejudice here cannot be overstated**. Bical willfully failed to produce hundreds of documents that go the heart of this lawsuit, both on SHF's claims and Bical's defenses. Regarding correspondence, Bical failed to produce hundreds of relevant communications including 100+ emails from his email account underlying the very arrangement and services at issue. Indeed, Judge Bulsara explained, *in this case*, how critical it was that Bical produce all emails from his custodial accounts e.g., even if SHF had an email, Bical's side of emails has significant independent value. *See* ECF 40 at 3.[23] The mere fact of the ***existence*** of such communications is highly relevant (in fact, it is damning for Defendants) as evidence of the parties'

[23] *See* ECF 40 at 3 ("[E]ven if an email was produced from one witness's custodial inbox, producing the same email from another witness's inbox establishes that the second witness received the email (and helps counter any suggestion that []she lacked knowledge of or did not receive the email[.]").

arrangement, Bical's requests for and acceptance of the work performed, and SHF's expectation of payment. *Id.* And the communications further show Bical untruthfulness as to core issues. Without same, SHF is severely prejudiced in his ability to show the full scope of Bical's knowledge, receipt, notice, acceptance, understanding, the arrangement, and credibility.[24]

Moreover, pleadings, litigation documents, client files, all documents that Defendants transmitted to Plaintiff (and others), are too **paramount** in this case where Bical (absurdly) contests the very fact and essence of the work SHF did for him. Indeed, Bical stated under oath that SHF performed no services other than a "few" "phone calls [and] letters." ECF 33-4 (08/28/23 Interrogatory Responses). Such documents could not be more "relevant." *See Dozier v. Quest Diag. Inc.,* 2010 WL 5393482 (S.D.N.Y. Dec. 8, 2010) (where un-produced discovery e.g., medical records in a disability case, goes to the "heart of the case," most severe Rule 37 terminating sanctions are appropriate).

Worse still, Bical maintains that he is not "personally responsible for alleged legal fees performed on behalf of business entities." ECF 13-2 at 2. Legally, that is incorrect as Bical is fully liable. Regardless, to factually rebut the defense, SHF sought discovery on these issues for years, including on issues of alter-ego liability as there is no distinction between Bical and his companies, which he uses to finance personal expenses. *Southern*, 624 F.3d at 144; *Anhui Konka Green Lighting Co., Ltd. v. Green Logic Supply, Inc.*, 2021 WL 807209 at * 4 (S.D.N.Y. Mar. 3, 2021) (sanctioning defendant where the "withheld documents that relate to the defendant entities' corporate structure, assets, shareholders, and successors directly relate to" successor liability […].

[24] The gamesmanship was laid bare during Bical's depositions. When SHF introduced his properly produced exhibits, Bical's counsel repeatedly raised bad-faith authenticity/ production objections. (E.g., Bical Dep. 3/6/26 at 112, 136, 146, 209). This was a manufactured strawman tactic. By withholding documents, including for example his own copies of correspondence, Bical cynically weaponized his own non-production to manufacture an otherwise non-existent basis to challenge the legitimacy of numerous authentic documents he possessed. *See* Order, ECF 40 at 3–4.

"Corporate documents are the type of documents that should be readily available to Defendants, yet Defendants have repeatedly failed to produce these documents.").[25]

Finally, Bical has put numerous conflicting and false positions in the record regarding the legal services at issue. In fact, at one point, he fraudulently claimed SHF performed no substantive legal services for him and that he never paid SHF. *See* ECF 10-2; 33-4. Years later he changed his story (after he realized that evidence exists…) and testified that maybe SHF did do legal work for him and he did pay SHF, but that came "later" as a "gesture of gratitude." *See* Defs. 11/24/25 Interrogatory Responses at 2-3. Documents related to all communications, all the work done, all payments (and related evidence of those payments via bank records and taxes showing any deductions for legal services regarding the legal fees paid to CLM[26] or SHF, or other "gratuitous" payments to SHF), are not just relevant – they are critical. SHF had not just the right, but the obligation to take crucial discovery on these issues. After his repeated scoffing at this action and his obligations, the Court said enough was enough, and told him to produce everything. He didn't. Instead, he lied over and over, to provide the appearance of compliance – smoke and mirrors. The Court should order an adverse inference instructing the jury that Bical failed to produce documents that would have been unfavorable to him.[27]

---

[25] This is all academic. Bical, because he violated court orders, lost the ability to object (including on relevance grounds) other than though a protective order, *which he never sought*.

[26] In the CLM action, SHF obtained the material benefit of persuading opposing counsel to re-title CLM's invoices in corporate names, enabling Bical to deduct $700,000.00+ he paid to CLM on tax returns, and worked extensively with Bical's accountant on the issue. *See* SHF Decl. ¶ 52, Composite Ex. 15 [Bical Prod. 176, Bical Prod. 267]. Bical does not know if such fees were deducted (Bical Dep. 3/6/26 at 203:12-204:6) making discovery on the issue all the more critical.

[27] The Court also retains discretion to order the adverse inference now and reserve on the precise language of same for the time of trial. *See Richard v. Dignean*, 2021 WL 5782106, at *6 (W.D.N.Y. 2021) (entering adverse inference and reserving on language for time of trial).

## CONCLUSION

The record is clear: any single instance of Bical's misconduct—whether his willful violation of multiple court orders, his perjurious sham affidavit, his destruction of evidence, or his years-long concealment of hundreds of responsive documents—would independently warrant severe sanctions. Taken together, this sustained campaign of obstruction, false swearing, and bad-faith gamesmanship has fundamentally corrupted these proceedings and irreparably prejudiced Plaintiff's ability to present his claims. The Court's patience has been tested long enough; Bical has demonstrated that he will only respond to consequences, and the integrity of this litigation demands that those consequences now be imposed.

**WHEREFORE**, Plaintiff respectfully requests an order: (1) striking Bical's answer and entering a default judgment against him; or, alternatively, (2)(a) precluding Bical from supporting or opposing designated claims and defenses and taking matters established, and (b) precluding Bical from introducing designated evidence that was improperly withheld; (3) issuing an adverse inference instruction that Bical failed to produce documents that would have been unfavorable to him; and (4) awarding Plaintiff his reasonable attorneys' fees and costs incurred in connection with Defendants' discovery misconduct.

Dated: November 10, 2026.

*Respectfully Submitted,*

Stuart H. Finkelstein
stuarthfinkelstein@gmail.com
*Pro Se Plaintiff*